```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
```

Robert Storm,                     :
    Plaintiff,                    :
                                  :
v.                                :    Case No. 3:05cv24 (JBA)
                                  :
ITW Insert Molded Products,       :
A Division of Illinois Tool       :
Works, Inc.,                      :
    Defendant.                    :

**Ruling on Defendant's Motion to Dismiss [Doc. # 13]**

Plaintiff Robert Storm commenced this common law action against his former employer, ITW Insert Molded Products, a Division of Illinois Tool Works, Inc. ("ITW"), following his termination from ITW, alleging wrongful discharge in violation of public policy, and intentional and negligent infliction of emotional distress. ITW, having removed the case to federal court on the basis of diversity jurisdiction, now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing: (1) Connecticut does not recognize an action for wrongful termination in breach of public policy where a statutory remedy is available to plaintiff; (2) ITW's actions were not sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress; and (3) ITW's actions were not unreasonable during the termination process, as required to state a claim for negligent infliction of emotional distress. For the reasons that follow, ITW's motion to dismiss [Doc. # 13] is granted in part

1

and denied in part.

## I. FACTUAL BACKGROUND

Plaintiff began his employment with defendant ITW's predecessor, Lakeville Precision Molding, Inc., on November 30, 1970, and since that date has performed duties such as machine operator, set up and lead man, materials manager, production supervisor, project manager, safety manager, maintenance manager, and OSHA compliance manager. See Amended Complaint [Doc. # 12] at ¶¶ 1-3. Lakeville Precision Molding, Inc. has since become owned and operated by defendant ITW, a Delaware corporation registered to do business in Connecticut. Id. at ¶¶ 4-5.

On December 24, 2002, plaintiff suffered congestive heart failure and was placed on medical leave from his employment at ITW. Id. at ¶ 6. Approximately three weeks later, on January 16, 2003, ITW's plant manager telephoned plaintiff at home, requesting that he come to the plant immediately, which plaintiff did. Id. at ¶¶ 7-8. Upon his arrival, plaintiff was informed that due to "financial conditions" his position had been eliminated and he was to be terminated, effective the next day, January 17, 2003. Id. at ¶ 9. Plaintiff "refused to accept the terms of his termination at that time, because he remained on medical leave." Id. at ¶ 10. ITW effectuated plaintiff's termination on April 28, 2003, the day he was released to return to work. Id. at ¶ 11.

Plaintiff claims that defendant acted fraudulently, unlawfully, wrongfully, and without warning or just cause, both in procuring his appearance at defendant's plant on January 17, 2003, and in terminating him on April 28, 2003.  Plaintiff alleges that he was unlawfully and wrongfully terminated because of his age (he is 55 years old), "in violation of stated public policy of the State of Connecticut, including but not limited to the age discrimination statutes embodied in state and federal law."[1]  Id. at ¶¶ 12-15.  Plaintiff states that the Connecticut Commission on Human Rights and Opportunities ("CHRO") has failed to act on the discrimination charge he filed on November 10, 2003,[2] and thus he asserts he is without statutory remedy for his discriminatory termination.  Id. at ¶¶ 16-19.

---

[1] Plaintiff's amended complaint refers to public policy "including, but not limited to the age discrimination statutes embodied in state and federal law," but does not identify any public policy other than age discrimination.  See Amended Complaint at ¶ 15.  In his opposition to defendant's motion to dismiss, plaintiff explains his allegation as "he was wrongfully terminated due to his age and health in violation of important public policy of the State of Connecticut."  See Pl's Opp. Mem. of Law [Doc. # 16] at 3.  However, as defendant notes, federal and state discrimination laws prohibit discrimination on the basis of a disability, not a person's health, as such.  See Def's Mem. of Law in Further Support of its Motion to Dismiss [Doc. # 23] at 3 & n.2.

[2] Plaintiff alleges that he filed a complaint with the CHRO on November 10, 2003, subsequently provided a notarized affidavit on November 19, 2003, and that "CHRO failed and neglected to take any action with regard to said complaint."  Amended Complaint at ¶¶ 16-18.

**II.   STANDARD**

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46 (footnote omitted); Jahgory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**III. DISCUSSION**

**A.   Plaintiff's Claim For Wrongful Termination in Violation of Public Policy**

As to plaintiff's claim that defendant "unlawfully and wrongfully discharged [p]laintiff because of his age . . . in violation of stated public policy of the State of Connecticut, including but not limited to the age discrimination statutes embodied in state and federal law," defendant argues that dismissal is required because there are remedies available to

plaintiff under state and federal age discrimination statutes. Defendant further argues that plaintiff should not be permitted to circumvent the administrative requirements and statutes of limitations of these statutes by invoking a public policy against age discrimination.  Plaintiff responds that his claim "goes beyond age discrimination" because of the circumstances of plaintiff's employment by defendant for more than thirty years, "essentially all of his adult life," and the remote situs of plaintiff and defendant in a "northwestern Connecticut town with few employers" such that plaintiff has been unable to find comparable replacement employment.  See Pl. Opp. Mem. of Law at 4.  Plaintiff thus argues that "[p]ermitting this discharge to go unredressed will leave valuable social policies, such as loyalty, community and stability . . . unvindicated."  Id.

The public policies against age discrimination articulated in the statutes referenced by plaintiff, see Amended Complaint at ¶ 15, are already safeguarded by the remedies enumerated in those statutes, and thus a claim for public policy wrongful discharge is not plaintiff's sole means for vindicating that anti-discrimination policy.[3]  Plaintiff points to no statutory authority or other source articulating "valuable social policies,

---

[3] Both the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-51 et seq., and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., provide causes of action and remedies for violation of the public policy against age discrimination.

such as loyalty, community and stability."  While employers whose loyalty to faithful employees and enhancement of family and community stability may garner public recognition, the absence of such employer attributes does not implicate any articulated public policy in Connecticut.  Thus, plaintiff's allegations of defendant's conduct do not implicate "an <u>explicit</u> statutory or constitutional provision or judicially conceived notion of public policy."  See <u>Daley v. Aetna Life & Casualty Co.</u>, 294 Conn. 766, 803-04 (Conn. 1999).

Plaintiff acknowledges that "Connecticut has long followed the rule that employment is at-will and terminable by either the employee or the employer with impunity."  Pl. Opp. Mem. of Law at 2 (citing <u>Fisher v. Jackson</u>, 142 Conn. 734, 736 (Conn. 1955)).  Connecticut common law provides an exception to this general rule for wrongful discharge "if [a] former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy."  <u>Sheets v. Teddy's Frosted Foods, Inc.</u>, 179 Conn. 471, 474-75 (Conn. 1980).  This exception is "a narrow one" and "courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation."  <u>Burnham v. Karl & Gelb, P.C.</u>, 252 Conn. 153, 165 (Conn. 2000).

Thus, "'[t]he cases which have established a tort or contract remedy for employees discharged for reasons violative of

public policy have relied upon the fact that in the context of their case the employee was <u>otherwise without a remedy</u> and that permitting the discharge to go unaddressed would leave a valuable social policy to go unvindicated.'"  <u>Id</u>. at 159-60 (citing <u>Atkins v. Bridgeport Hydraulic Co.</u>, 5 Conn. App. 643, 648 (Conn. Ct. App. 1985)) (emphasis in original).[4]  In articulating a public policy exception, the Connecticut Supreme Court "'intended merely to provide a 'modicum of judicial protection' for those who did not already have a means of challenging their dismissals under state law.'"  <u>Medvey v. Oxford Health Plans</u>, 313 F. Supp. 2d 94, 99 (D. Conn. 2004) (citing <u>Banerjee v. Roberts</u>, 641 F. Supp. 1093, 1108 (D. Conn. 1986) and <u>Sheets</u>, 179 Conn. at 477).  However, given the rule of at-will employment, this exception is not intended to subsume all unfair dismissals, only those which have the purpose or effect of subverting some unprotected public policy, otherwise the at-will doctrine would become meaningless.

---

[4] <u>See</u> <u>also</u> <u>Felekey v. Am. Telephone & Telegraph Co.</u>, No. 02 CV 691 (CF), 2004 WL 2958468, at *3-4 (D. Conn. Nov. 3, 2004) (granting defendant's motion to dismiss plaintiff's wrongful discharge claim where the public policy articulated by plaintiff – "for timely payment of full wages and compensation or benefits earned for just services" – was embodied in a state statute, which also provided a remedy for violations of the policy, thus precluding the common law wrongful discharge claim); <u>Swihart v. Pactiv Corp.</u>, 187 F. Supp. 2d 18, 25 (D. Conn. 2002) (precluding plaintiff's wrongful discharge claim where "[t]he public policy against retaliation is adequately vindicated through Title VII and the remedies available thereunder," noting, "a public policy cause of action is only available when a plaintiff is otherwise without a remedy").

Thus, the existence of statutory remedies for plaintiff's allegedly wrongful discharge in violation of the public policies embodied in state and federal age discrimination statutes precludes plaintiff's claim for public policy wrongful discharge, no matter what the outcome of the administrative discrimination charge.  See Burnham, 252 Conn. at 162-63 (finding that plaintiff's wrongful termination claim would be precluded due to the existence of a statutory remedy, even where plaintiff's complaint under the federal statute had been administratively closed).  Plaintiff offers no explanation as to why, in the face of CHRO's inaction, he did not seek a Release of Jurisdiction, see Conn. Gen. Stat. § 46a-100, in order to bring his age discrimination claim in state court.  Even if defendant's suggestion that plaintiff's administrative charge was untimely is accurate, on proper grounds plaintiff could invoke the doctrine of equitable tolling of administrative deadlines.  In any event, this action for wrongful discharge is not available for plaintiff as a substitute for a defective administrative filing.  See Armstead v. The Stop & Shop Companies, Inc., No. 01 CV 1489 (JBA), 2003 WL 1343245 (D. Conn. Mar. 17, 2003).

Accordingly, plaintiff's claim for wrongful termination in violation of public policy is dismissed as duplicative of a statutory remedy and based on "a heretofore unrecognized public policy mandate."  See Daley, 249 Conn. at 804.

## B.   Plaintiff's Claim For Intentional Infliction of Emotional Distress

Plaintiff's second claim, for intentional infliction of emotional distress, alleges that "[t]he actions of the Defendant's agents in fraudulently contacting the Plaintiff and requesting his presence while on medical leave and then, without notice or warning, attempting to terminate the Plaintiff while on medical leave was egregious and the plant manager and human resources personnel of the Defendant knew, or should have known, that such conduct was likely to cause severe emotional distress to the Plaintiff."  Amended Complaint at ¶ 10.  Defendant argues that this claim must be dismissed because plaintiff does not allege any sufficiently extreme or outrageous conduct on the part of defendant to support such a claim.[5]  Plaintiff contends, however, that the conduct alleged can support a claim of intentional infliction of emotional distress given the circumstances of his termination, and the context of his longtime employment with and loyalty to defendant.  Plaintiff argues that

---

[5] In order for plaintiff to survive a motion to dismiss on his claim for intentional infliction of emotional distress, he must allege: (1) that defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct; (2) that the conduct was extreme and outrageous; (3) that defendant's conduct was the cause of plaintiff's distress; and (4) that the emotional distress sustained by plaintiff was severe.  See Appleton v. Bd. of Educ. of the Town of Stonington, 254 Conn. 205, 210 (Conn. 2000).  The parties do not dispute that plaintiff has sufficiently pleaded the first, third, and fourth elements of the tort.

his evidence will show that on the day he was terminated, "he fully believed that he was being called in to assist in a 'shop matter'" and that his loyalty was such that he was willing to go into the factory against doctor's orders. See Pl. Opp. Mem. of Law at 6. Instead, he was pretextually induced to come in and was met by corporate officials who intended only to terminate "the only livelihood he had ever experienced without any cause and at a time when he was physically and emotionally compromised due to his sudden illness." Id.

The parties are in agreement that whether defendant's alleged conduct was sufficiently "extreme and outrageous" to justify a claim for intentional infliction of emotional distress is a question for the Court in the first instance and only "where reasonable minds disagree" will it become an issue for the jury. See Appleton v. Bd. of Educ. of the Town of Stonington, 254 Conn. 205, 210 (Conn. 2000). The Connecticut Supreme Court has articulated the standard for "extreme and outrageous" conduct as follows:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional

10

infliction of emotional distress.
Id. at 210-11.

While this is a high bar, and conduct that is only hurtful or in poor taste does not rise to the level of extreme and outrageous conduct required under Connecticut law, it does not appear beyond all doubt that plaintiff's allegations that defendant "fraudulently" called plaintiff into the plant, appearing to seek his assistance while plaintiff was on medical leave recuperating from surgery, solely to personally terminate him, and subsequently consummating this termination on his first day back at work, could not be proved conduct which a reasonable person could find extreme and outrageous.  While "[t]he mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior," Parsons v. United Techs. Corp., Sikorsky Aircraft Division, 243 Conn. 66, 89 (Conn. 1997), further development of the record is necessary to determine whether the circumstances of defendant's actions could be found to be "beyond all possibly bounds of decency."  Even though simply terminating an employee while on medical leave or at the conclusion of it cannot alone state a cause of action for intentional infliction of emotional distress, drawing all reasonable inferences from plaintiff's allegations, defendant's conduct of knowingly exposing plaintiff to unreasonable and unnecessary risk of cardiac arrest, which exceeds bad manners or

hurt feelings, could show sufficient egregiousness.

Accordingly, defendant's motion to dismiss plaintiff's claim for intentional infliction of emotional distress is denied.

## C.   Plaintiff's Claim For Negligent Infliction of Emotional Distress

Plaintiff's third claim is one for negligent infliction of emotional distress, based on defendant's allegedly "egregious and unreasonable" conduct in attempting to terminate plaintiff while on medical leave without notice or warning.  See Amended Complaint at ¶ 10.  Plaintiff alleges that "[d]efendant and its agents knew or should have known that its actions were careless and negligent and caused the [p]laintiff severe emotional distress by notifying him or his termination while on medical leave."  Id. at ¶ 11.

"In order to recover on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm."  Gomes v. Commercial Union Ins. Co., 258 Conn. 603, 619 (2001) (internal quotation and citation omitted).  Thus, a claim for negligent infliction of emotional distress "focuses on the manner of the discharge, whether the employer's conduct in the termination process was unreasonable, not whether the termination itself was unreasonable."  Cameron v. Saint Francis Hospital & Med. Ctr., 56

12

F. Supp. 2d 235, 241 (D. Conn. 1999) (internal citation omitted). "Recovery for unintentionally caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact." Id. (citing Montinieri v. S. New England Tel. Co., 175 Conn. 337, 345 (Conn. 1978)).

Defendant seeks dismissal of plaintiff's claim, arguing that: (1) plaintiff has not alleged unreasonable conduct on the part of defendant sufficient to justify such a claim; and (2) defendant's allegedly wrongful conduct that forms the basis for plaintiff's purported claim did not occur during the plaintiff's termination process. Plaintiff responds that defendant's conduct did occur during the termination process, because defendant was attempting to terminate plaintiff at the time, and that his "termination was done in an unreasonable manner and at an unreasonable time when the Plaintiff was vulnerable due to his medical conditions." Pl. Opp. Mem. of Law at 8-9.

The Court bears in mind the cautionary instruction of the Connecticut Supreme Court in its initial decision recognizing a cause of action for negligent infliction of emotional distress, that the cause of action should "be limited so as not to open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law." Montinieri, 175 Conn. at 345 (internal quotation and citation omitted).

13

Thus, in the employment context, a tort of negligent infliction of emotional distress arises only where it is based on the unreasonable conduct of the defendant during the termination process. See Parsons, 243 Conn. at 88. "The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." Id. at 88-89.

The Court must therefore focus on the manner of plaintiff's discharge and whether defendant's conduct in the termination process was unreasonable. In this case, drawing all reasonable inferences in plaintiff's favor, plaintiff has sufficiently alleged that defendant's purportedly unreasonable actions were part of plaintiff's termination process – commencing when he was called into the plant and told he was fired, and concluding when that firing was effected immediately upon plaintiff's return from medical leave. See Cameron, 56 F. Supp. 2d at 241-42 (concluding that plaintiff had sufficiently alleged conduct occurring during the termination process where plaintiff was notified of his termination in December 1996 and was not terminated until September 30, 1997, and plaintiff complained of actions taking place within that ten month period).⁶ Moreover, defendant's

---

⁶ Previous courts have noted the distinction "between actions which are part of the termination process and actions which are merely related to the termination process." Cameron, 56 F. Supp. 2d at 241. Thus, this case is distinguishable from a case where the plaintiff complains of conduct related to his

calling plaintiff into the plant to terminate him, with the knowledge that he was on medical leave recovering from congestive heart failure, could be interpreted by a reasonable jury to constitute conduct that defendant knew or should have known created an unreasonable risk of causing emotional distress capable of causing physical illness or harm.  Thus, defendant's motion to dismiss plaintiff's negligent infliction of emotional distress claim is denied.  See e.g. Edwards v. Cmty. Enters., Inc., 251 F. Supp. 2d 1089, 1105-06 (D. Conn. 2003) (where defendant knew that plaintiff was recovering from pneumonia when firing plaintiff and giving her just 48 hours to vacate her home, a reasonable jury could find that defendant "knew or should have known that its conduct involved an unreasonable risk of causing emotional distress and that such distress could result in illness or bodily injury," noting that plaintiff's claim "is based on the aggravating circumstances of the termination, not the mere fact

---

employment generally, but not of conduct that constitutes part of the termination process itself.  See e.g., Sacco v. George Schmitt & Co., No. 97CV2180 (AWT), 1998 WL 823039, at *5 (D. Conn. Sept. 14, 1998) (plaintiff's allegations concerning defendant's conduct spanning a four-month period – beginning with the defendant's insistence that plaintiff operate a press by himself, which led to plaintiff's injuring his back and defendant subsequently threatening to terminate plaintiff and suspending him without pay, and including defendant's warning that plaintiff's refusal to sign an accident analysis form would constitute insubordination, which plaintiff refused to sign resulting in his termination – did not constitute allegations concerning conduct during the termination process, but instead conduct leading to the termination process).

that [plaintiff] was terminated").

**IV.   PUNITIVE DAMAGES**

In his Amended Complaint, plaintiff claims, <u>inter alia</u>, "[p]unitive damages pursuant to common law and Connecticut General Statutes Section 31-290a."  Amended Complaint, Prayer for Relief at ¶ 3.  Defendant argues that because Conn. Gen. Stat. § 31-290a provides, <u>inter alia</u>, that "[n]o employer . . . shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits . . . ," Conn. Gen. Stat. § 31-290a(a), and plaintiff makes no allegation that defendant terminated or discriminated against plaintiff due to the filing of any claim for workers' compensation benefits, plaintiff's claim for punitive damages must be dismissed.  While defendant is correct that no such allegation appears in plaintiff's Amended Complaint, and thus plaintiff is not entitled to punitive damages pursuant to Conn. Gen. Stat. § 31-290a, plaintiff may be entitled to the punitive damages he seeks pursuant to common law, which in Connecticut are limited to litigation expenses less taxable costs.  <u>See</u> <u>Berry v. Loiseau</u>, 223 Conn. 786, 825-27 (Conn. 1992).  Accordingly, plaintiff's claim for punitive damages will not be dismissed.

**V.   CONCLUSION**

For the foregoing reasons, ITW's motion to dismiss is

granted in part and denied in part, as described above.

>                         IT IS SO ORDERED.
>                              /s/
>                         _____
>                         Janet Bond Arterton
>                         United States District Judge

**Dated at New Haven, Connecticut this 29th day of November, 2005.**